**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Alfonso L. DUNN, Defendant–Appellant.**

No. 86–2545.

United States Court of Appeals, Tenth Circuit.

March 11, 1988.

Robert E. Mydans, Asst. U.S. Atty. (William S. Price, U.S. Atty., and Mark D. McBride, Asst. U.S. Atty., on the brief), Oklahoma City, Okl., for plaintiff-appellee.

Chester I. Lewis of Lewis & Lewis, Wichita, Kan., for defendant-appellant.

Before LOGAN, BARRETT, and MOORE, Circuit Judges.

JOHN P. MOORE, Circuit Judge.

Alfonso L. Dunn appeals a final judgment of conviction of conspiracy to possess with intent to distribute and to distribute cocaine in violation of 21 U.S.C. § 846. Defendant raises two issues in this appeal which, reduced to their basic premise, question the fundamental fairness of his trial. However, after reviewing the record and briefs, we are satisfied the defendant was afforded a fair trial and affirm.

## I. Factual Background

Mr. Dunn's conviction arises from the extensive investigation and ultimate prosecution of an Oklahoma City based cocaine distribution scheme run by Claude Bowie, Jr. From January 1984 until December 1985, Bowie supervised a distribution network out of several locations in Oklahoma City. Although Mr. Dunn resided in Wichita, Kansas, Bowie and Dunn became acquainted. The government sought to prove that this acquaintance connected Dunn into Bowie's cocaine network.

In May 1986, fifteen defendants including Dunn were indicted for conspiracy in violation of 21 U.S.C. § 846. The government charged in Count I that from January 1, 1984, and continuously until December 3, 1985, Dunn received cocaine from Bowie for redistribution in the Wichita, Kansas area. Counsel for defendant filed pretrial motions including a motion for a bill of particulars on the ground that Fed.R. Crim.P. 7(c)(1) had been violated. The court denied this motion, satisfied that the indictment sufficiently apprised the defendant of the nature of the charge in order to avoid surprise and bar the risk of double jeopardy. Moreover, the court found the government, which agreed to reciprocal discovery, had provided generous discovery to enable the defendant to prepare his defense.

During the ensuing three-day jury trial,[1] the government elicited testimony from six coconspirators who had entered guilty pleas in exchange for their cooperation. The first witness, Raulie Ervin, Bowie's bodyguard, testified that sometime during the summer of 1984 he delivered approximately eight ounces of cocaine to Dunn in Wichita. Later that year, he stated he accompanied Joe Cotton, a Bowie runner, to Wichita, and dropped off two ounces for which, Ervin believed, Cotton received $2,000. When the government attempted to introduce a black address book for Ervin to identify and explain its contents, the

1. Mr. Dunn was tried jointly with his daughter, Kim Dunn, who has separately appealed her judgment of conviction.

court called counsel to the bench and cautioned them about coconspirator hearsay. Consequently, the court decided "it is more likely than not that a conspiracy did exist between defendant, Alfonso Dunn, and the declarant, Claude Bowie," and found the statements in the book were made "during the course in furtherance of the object of the conspiracy." The court then cautioned the jury that Ervin's testimony was to be considered only to judge his credibility and explained that the witness's guilty plea was not to be used as substantive evidence of Dunn's guilt.

The government recommenced questioning Ervin who explained that B.M. notations referred to Big Man, Dunn's nickname and that numbers listed next to B.M. were the amounts of money Dunn owed Bowie. Asked whether he had ever heard any conversations about Dunn, Ervin answered that Bowie had said that business was doing well, "that most of the money was coming from Wichita, okay."

Defense counsel vigorously cross-examined Ervin, hammering away in particular at the six prior statements Ervin had given to FBI Agent Lanata in which Ervin had never mentioned the eight-ounce cocaine delivery. The government then stipulated to the absence of the statement in the discovery materials handed over five days before trial. Defense counsel's cross-examination attempted to destroy the witness's credibility by stressing Ervin's extensive involvement in the conspiracy, which was exchanged, counsel contended, for five years' probation and this testimony. Defense counsel suggested the quid pro quo unraveling—that Ervin fabricated this large $20,000 cocaine drop in order to sweeten the government's case for trial.

The government then called Joseph Cotton, a Bowie runner, who testified to two visits to Wichita where he delivered approximately two ounces each time. Again defense counsel sought to discredit the testimony based on Cotton's prior statements to the FBI indicating that one ounce of cocaine had been taken to Wichita on each trip. Lynn Rae Posey, another Bowie runner, testified that he was at Bowie's house

when Dunn drove up to show off his new car. Sieburn McCarthur, a bodyguard who worked in Bowie's "dope house," stated that he saw Dunn in Bowie's house in the fall of 1985, where he observed Bowie hand a one ounce package of cocaine to Dunn, who hurriedly left because "he had customers waiting." Since McCarthur stated that Ervin, Posey, and others were also in the house, the court summoned counsel to the bench to ask if any witnesses should be recalled. Defense counsel answered he would recall certain witnesses since this was the first time he had heard of this incident and no one else had so testified.

The government called Dale Cotton, Joseph's wife, who corroborated the two Wichita trips, and Glenda Schwarz, a Bowie distributor in Wichita. The government rested; and defense counsel recalled Posey, Cotton, and Ervin, only the latter of whom could corroborate McCarthur's testimony about seeing Dunn at Bowie's house in the fall of 1985. The defendant then took the stand. According to Dunn's version, the only drug-money transaction linking him to Bowie arose from a trip Bowie had made to Wichita. Bowie had known Dunn's son, Douggie, who was murdered in a drug-related shoot-out. According to Dunn, Bowie was visiting him in Wichita when Bowie's wife called to say she had run out of money while traveling with their two children. Bowie asked Dunn for a loan. Thus, if Bowie delivered a small quantity of cocaine for Dunn's personal use, Dunn considered it repayment for the loan. Dunn testified that prior to this indictment, he had never been convicted of a felony and was retired on disability after working for a meat-packing plant for seventeen years.

The jury convicted Dunn of conspiracy, and the court later imposed an eight-year sentence and a $50 fine. This appeal followed the denial of motions for judgment of acquittal and a new trial.

## II. Bill of Particulars

Defendant urges that the court's denial of his pretrial motion for a bill of particulars caused prejudicial surprise and impeded his ability to present a defense. In the

original motion, defendant averred the indictment violated Fed.R.Crim.P. 7(c)(1) and was constitutionally infirm because it did not specify the manner in which and times when he unlawfully conspired with Bowie. Moreover, the government's mere tracking of the statutory language was unsatisfactory, defendant argued, to be pled as a bar to double jeopardy.

█ While the indictment does track the statutory language, that fact alone will not defeat it. *United States v. Moore*, 556 F.2d 479, 482 (10th Cir.1977) (citing *Hamling v. United States*, 418 U.S. 87, 117, 94 S.Ct. 2887, 2907, 41 L.Ed.2d 590 (1974)). An indictment is "generally sufficient if it sets forth the offense in the words of the statute so long as the statute adequately states the elements of the offense." *United States v. Salazar*, 720 F.2d 1482, 1486 (10th Cir.1983), *cert. denied*, 469 U.S. 1110, 105 S.Ct. 789, 83 L.Ed.2d 783 (1985). Sufficiency is determined by practical rather than technical considerations. *United States v. Crim*, 527 F.2d 289 (10th Cir. 1975), *cert. denied*, 425 U.S. 905, 96 S.Ct. 1497, 47 L.Ed.2d 755 (1976) (citations omitted).

█ In this case, the indictment quoted the language of 21 U.S.C. § 846 and included the dates of the illegal activity, the place, and the specific controlled substance.[2] An indictment need not go further and allege "in detail the factual proof that will be relied upon to support the charges." *United States v. Crippen*, 579 F.2d 340, 342 (5th Cir.1978), *cert. denied*, 439 U.S. 1069, 99 S.Ct. 837, 59 L.Ed.2d 34 (1979) (citations omitted).

Nevertheless, defendant requested a bill of particulars for plaintiffs to state with specificity the manner in which and when defendant conspired with Bowie and the date, time, place, witnesses, and circumstances concerning the alleged conspiracy. A bill of particulars, however, is not a

discovery device but may serve to "amplif[y] the indictment by providing additional information." *United States v. Johnson*, 575 F.2d 1347, 1356 (5th Cir.1978), *cert. denied*, 440 U.S. 907, 99 S.Ct. 1213, 59 L.Ed.2d 454 (1979). "The purpose of a bill of particulars is to inform the defendant of the charge against him with sufficient precision to allow him to prepare his defense, to minimize surprise at trial, and to enable him to plead double jeopardy in the event of a later prosecution for the same offense." *United States v. Cole*, 755 F.2d 748, 760 (11th Cir.1985).

█ A district court has broad discretion in deciding this motion. Thus, we will reverse the denial of a motion for a bill of particulars only upon finding that the court abused its discretion. *United States v. Moore*, 556 F.2d at 483. To find such an abuse, defendant must show that he was "actually surprised at trial and thereby incurred prejudice to his substantial rights." *Cole*, 755 F.2d at 760. This test is explained:

Taken literally, this standard might require that defendant gain discovery of everything in the prosecution's files, because only such broad discovery can assure that defendant will not be subjected to "prejudicial surprise." But the concern here focuses on surprise only as to the particular acts or events that the government will cite at trial as establishing the crime.

2 LaFave and Israel, *Criminal Procedure* § 19.2(f) (1984).

Defendant's counsel contends that actual surprise occurred when Ervin testified about the eight-ounce cocaine delivery which had never been mentioned in any of his six prior statements to the FBI. In addition, the defendant did not receive this "open file" until five days before the trial. McCarthur's later testimony about observing Bowie hand Dunn a bag of cocaine was also only revealed at trial. During oral

---

**2.** Count I stated:

From on or about the 1st day of January, 1984, and continuously thereafter until on or about the 3rd day of December, 1985, at Oklahoma City, Oklahoma, within the Western Judicial District of Oklahoma, and elsewhere,

ALFONSO L. DUNN received cocaine from CLAUDE FRANKLIN BOWIE JR. for redistribution in the Wichita, Kansas area.

All in violation of Title 21, United States Code, Section 846.

argument in this appeal, counsel suggested that these coconspirators were adding "yeast to the bread," sweetening their side of the plea bargain to deliver the government's case against Dunn. Having planned to defend the evidence of two small cocaine deliveries, counsel insists "this devastating information" resulted in prejudicial surprise.

Nevertheless, the defendant has failed to demonstrate the fact of prejudice. Defense counsel extensively cross-examined the government's witnesses and was later permitted to recall key witnesses to rebut McCarthur's testimony. More importantly, defense counsel failed to request a continuance or otherwise make known to the district court the prejudicial surprise he now claims when he learned of the eight-ounce cocaine delivery. This failure, coupled with defense counsel's conscientious cross-examination of the government's witnesses, allays our concern that defendant's substantial rights were prejudiced or the outcome was unfair. *United States v. Wright*, 826 F.2d 938, 943 (10th Cir.1987).

Moreover, the indictment sets forth the elements of the offense charged and sufficiently apprised the defendant of the charges to enable him to prepare for trial. *United States v. Kendall*, 665 F.2d 126, 134 (7th Cir.1981), *cert. denied*, 455 U.S. 1021, 102 S.Ct. 1719, 72 L.Ed.2d 140 (1982) (citation omitted). Since the defendant is "not entitled to know all the *evidence* the government intends to produce, but only the *theory* of the government's case," *United States v. Giese*, 597 F.2d 1170, 1181 (9th Cir.), *cert. denied*, 444 U.S. 979, 100 S.Ct. 480, 62 L.Ed.2d 405 (1979), the district court did not abuse its discretion in denying defendant's motion for a bill of particulars. We are satisfied also from the record defendant's right to a fair trial was not prejudiced.

### III. Coconspirators' Guilty Pleas

Defendant contends the district court's failure to limit the use of coconspirators'

guilty pleas to determinations of credibility alone resulted in reversible error. Conceding that the court cautioned the jury midway in Ervin's testimony, defendant complains that the instruction was not repeated after each of the other coconspirator's testimony. Thus, the jury was free to use the testimony as substantive evidence of guilt. Further noting that Instruction No. 6, Guilty Plea of an Accomplice,[3] was given to the jury, defendant maintains that the effect of the prosecutor's repeated comments in opening and closing arguments overrode any limiting instructions and made it inevitable that the guilty pleas would be used as substantive evidence of guilt. Defendant insists the prosecutor used the convictions "as direct and consequential proof of defendant's guilt to the conspiracy charge."

■ This court has firmly established the law that the plea or conviction of a codefendant may not be used as substantive evidence of another's guilt. *United States v. Smith*, 806 F.2d 971, 974 (10th Cir.1986); *United States v. Davis*, 766 F.2d 1452, 1456 (10th Cir.), *cert. denied*, 474 U.S. 908, 106 S.Ct. 239, 88 L.Ed.2d 240 (1985); *United States v. Baez*, 703 F.2d 453, 455 (10th Cir.1983). If a coconspirator testifies, the government or defense may question the witness about the plea in order for the jury to assess the credibility of the witness. Nevertheless, "[b]ecause of the potential for prejudice, cautionary instructions limiting the jury's use of the guilty plea to permissible purposes are critical." *United States v. Baez*, 703 F.2d at 455. "Admissibility of the plea turns on the purpose for which it is offered." *United States v. Halbert*, 640 F.2d 1000, 1004 (9th Cir.1981).

■ In the present case, the prosecutor introduced each plea agreement into evidence and questioned each witness about signing. Defense counsel searchingly

---

**3.** Instruction No. 6 states:

Nor should you consider that the defendants are guilty simply because someone who is alleged to be an accomplice has pled guilty to the conspiracy charges in this case. In

other words, members of the jury, you should not consider that other person's guilty pleas imply that either Kim Dunn or Alfonso Dunn is also guilty.

cross-examined each witness to probe the motivation for signing and undermine the witness's veracity. At no time during the government's opening and closing arguments to the jury did defense counsel object to the prosecutor's remarks about "the dirty business" in which these players were all mired. While only one contemporaneous, cautionary instruction was offered during Ervin's testimony, the district court later instructed the jury on the permissible use of the pleas of the coconspirators. We believe that this final instruction was sufficient to contain the prosecutor's "birds of a feather" remarks during opening and closing arguments. Although it is preferable to caution the jury after each coconspirator or codefendant testifies, we are unwilling to find *per se* plain error on this failure alone. *See Davis*, 766 F.2d at 1456. The district court properly instructed the jury in understandable terms which assured the fundamental fairness of defendant's trial.

AFFIRMED.