### UNITED STATES of America, Plaintiff,

v.

### Cordell NICHOLS, a/ka Quinndell Johnson, Kristen White, and Tristan Mitchell, a/k/a/ Tyrone Greene, Defendants.

**No. 02–40098–01–JAR.**

United States District Court, D. Kansas.

March 10, 2003.

Dwight L. Miller, Topeka, KS, James G. Chappas, Jr., Topeka, KS, Marilyn M. Trubet, Topeka, KS, for Defendants.

Anthony W. Mattivi, Office of U.S. Attorney, Topeka, KS, for Plaintiff.

*ORDER DENYING DEFENDANTS' MOTIONS FOR SUPPRESSION, BILL OF PARTICULARS, SEVERANCE AND TO OBTAIN EXPERT; GRANTING DEFENDANTS' RESERVATION TO FILE A MOTION TO QUASH AND GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR JURY COMPOSITION DISCOVERY*

ROBINSON, District Judge.

On March 3, 2003, the above matter was on for several motions before the Court. Non-substantive motions were ruled on orally and set out in a minute order (Doc. 156). The Court heard testimony and argument on defendants' Motions to Suppress (Docs.58, 119, 121, 26), Motion for Bill of Particulars and Reservation to File Motion to Quash (Doc. 141), Motion to Sever Trials (Doc. 105), Motion to Access Grand Jury Composition and Selection Information (Doc. 135) and Motion to Obtain Expert (Doc. 146). Defendant Cordell Nichols submitted a supplement to his motion to suppress, which was also considered by the Court. The Court is now prepared to rule.

**Motion to Suppress**

The motions to suppress cover two separate incidents. The first is a traffic stop and subsequent home and automobile search that occurred on September 14, 2000. The second is a traffic stop and subsequent vehicle search of May 22, 2002.

The Court will address the September 14, 2000 incident first.

On September 14, 2000, DEA Special Agent David Turner received information from a confidential informant that a 1997 or 1998 green Landrover would be traveling westbound on I–70, near St. Louis, MO, at approximately 7:00 p.m. The informant relayed that the vehicle would contain a small amount of marijuana and a large amount of cash. The informant also said the vehicle was headed to California to pick up heroin and that it contained three males who were believed to be Cordell Nichols, Daniels and Ron LNU. The informant also provided a license plate number. SA Turner testified that he had used this informant three times over the past year. All three occasions yielded arrests seizing 1 kilo of cocaine, 1 kilo of heroin and 60 lbs of marijuana. The agent also testified that prior to working with the DEA, the informant had worked for the IRS. Based on this information, SA Turner had local police set up surveillance on I–70 for the Landrover. The vehicle was spotted traveling westbound on I–70 at approximately 7:15 p.m. After spotting the vehicle, surveillance officers relayed that the Landrover was speeding and had changed lanes without using a turn signal. The vehicle was then stopped by a marked patrol car.

Upon approaching the vehicle, Det. William Verhage testified that he could smell marijuana coming from the vehicle. The vehicle contained four occupants and all were removed and arrested on narcotics violations based on the odor of marijuana. The stop was then moved to the Edmondton Police Department, a suburb of St. Louis, Mo. Upon questioning the occupants, the officers received conflicting stories about their destination with one saying California and the other saying Wyoming.

Det. Verhage received permission to search the vehicle from the person on the lease, Damon Campbell. Marijuana was found on the back floorboard and $5700.00 was found in a suitcase. Cordell Nichols said the suitcase belonged to him and personal items bearing his name were found inside the suitcase.

Officers then went to the apartment Cordell Nichols shared with his girlfriend, a Ms. Sanders. Ms. Sanders had rented the apartment and the utilities were in her name. She gave officers consent to search. Officers found 33 grams of heroin, a coffee grinder often used to grind heroin into powder, other paraphernalia, two weapons and ammunition. Lab tests revealed Cordell Nichols' fingerprint on the coffee grinder.

■ Despite the established reliability of the informant and the corroboration of the information he/she provided, the vehicle stop in this case need not rest on the information given to Det. Turner by the confidential informant. Once the surveillance officers spotted the Landrover, they observed two traffic violations—speeding and a lane change without using a turning signal. While no tickets were issued for the violations, it gave them more than reasonable suspicion to stop the vehicle.[1] Based on the officers actually observing the violations, they had probable cause to initiate the stop.[2] Once Det. Verhage approached the vehicle and smelled the odor of marijuana, he had probable cause to search the vehicle,[3] even absent

what was clearly a valid consent by Damon Campbell, the person with authority to give such consent.

■ Additionally, the search of Nichols' apartment was done by a valid, uncoerced consent of his girlfriend, who clearly had authority to give such consent as she had rented the apartment and the utilities were in her name.[4] The stop, subsequent search and eventual search at the apartment were textbook examples of stops and searches supported by probable cause and/or valid consent. Defendants' motions as to this stop are denied.

On May 22, 2002, Trooper Michael Weigel of the Kansas Highway Patrol stopped the defendants' vehicle for following too closely. Trooper Weigel testified that he is trained to use a stopwatch to determine if a car is traveling too closely. The procedure involves getting in a position to view the rear bumper of the lead car and the front bumper of the trailing vehicle. Then, an obstacle is chosen, such as a broken line mark in the center of the highway. When the rear bumper of the leading car passes the mark, the stopwatch starts. Then, when the front bumper of the following car passes the mark, the stopwatch is stopped. If the time, while traveling on the highway, is less than two seconds, the trailing vehicle is following too closely. Trooper Weigel testified that he conducted this test on the defendants' vehicle three times and each time the stopwatch measured the distance as between

---

**1.** *United States v. Ramstad,* 308 F.3d 1139, 1144 (10th Cir.2002) (citations omitted) ("Consequently, a traffic stop is reasonable under the Fourth Amendment at its inception if the officer has either (1) probable cause to believe a traffic violation has occurred or (2) a reasonable articulable suspicion that this particular motorist violated any one of the multitude of applicable traffic and equipment regulations of the jurisdiction.") (internal quotations omitted).

**2.** *Id.*

**3.** *United States v. Downs,* 151 F.3d 1301, 1303 (10th Cir.1998) (citing *United States v. Morin,* 949 F.2d 297, 300 (10th Cir.1991)).

**4.** *United States v. Matlock,* 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974).

one second and one and a half seconds. At this point, Trooper Weigel pulled in behind the vehicle and activated his emergency lights. Defendant Tristin Mitchell was driving the car but he did not have a driver's license with him. The passenger, defendant Nichols, did not have a driver's license either. The only person in the car with a valid driver's license was the back passenger, defendant Kristen White.

Trooper Weigel asked for the documentation to the vehicle and found that it was rented in Sacramento, California on 5–15–02 for one day and that it was not authorized to leave the state. Additionally, the renter and only authorized driver was an Angela McCauley, who was not present. None of the occupants could produce any proof that they were authorized to have or drive the vehicle.

Trooper Weigel gave a warning citation to Tristin Mitchell, the driver, for following too closely. Trooper Weigel testified that Mitchell did not deny he was driving too closely and agreed that he needed to keep at least two seconds behind the vehicle in front of him. Trooper Weigel advised White that she would have to drive because she was the only occupant with a driver's license. He told them they were free to leave. Trooper Weigel then asked White if he could ask her a few questions. In response to the trooper's questions, she said she did not have any guns, drugs or explosives in the car. Trooper Weigel then asked if he could look in the trunk of the car and he testified that White responded "sure." White struggled in figuring out how to open the trunk and Trooper Weigel showed her the button on the car door that popped the trunk open.

Upon looking in the trunk, Trooper Weigel found a plastic bag containing mar-ijuana in plain view. All three occupants were placed under arrest, handcuffed and Mirandized. Upon further searching the trunk, Trooper Weigel found wrapped bundles of what he believed was black tar heroin. A lab test confirmed his belief.

■ Defendants challenge the stop and subsequent search of the vehicle. As to the stop, the trooper's testimony was clear and credible in that he observed the vehicle for a long enough period of time to clock its distance from the lead vehicle three times. Each time the measurement showed the defendants were less than two seconds behind the vehicle. The government has met its burden of showing that Trooper Weigel had reasonable suspicion that a violation had occurred. In fact, since Trooper Weigel observed the violation himself, he had probable cause that the defendants were traveling too closely.[5]

Defendant Nichols argues that the trooper's motives in pulling over the vehicle were improper. He argues that the trooper pulled over the car merely because it had out of state plates and that, further, this is the trooper's general course, citing a prior state court decision.[6] In *State v. DeMarco*, the Kansas Supreme Court affirmed a district court's suppression of evidence from a car stop conducted by Trooper Weigel. However, while defense counsel argued to this Court that the stop in *DeMarco* was found illegal because of pretext, this is not the case. The Kansas Supreme Court found the stop legal[7] but suppressed the evidence because the defendants were held for an unreasonable time after the traffic stop was completed.[8] The district court originally found the stop illegal because it was based on pretext, but this is an erroneous

5. *Ramstad,* 308 F.3d at 1144.

6. *State v. DeMarco,* 263 Kan. 727, 952 P.2d 1276 (1998).

7. *Id.* at 1281.

8. *Id.* at 1286.

statement of the law, which the court corrected on appeal.[9] Trooper Weigel had observed a traffic violation—changing lanes without signaling. There was nothing improper about the stop in *DeMarco.* It appeared that the defendant was suggesting that Trooper Weigel had subjective motives, tied to the out of state license plate, for stopping the vehicle in *DeMarco* and has the same subjective motive for stopping the out of state vehicle in the case at hand. This argument is without merit. An officer's subjective motives are irrelevant when conducting a traffic stop.[10] The idea that the stop before the Court was pretext holds no legal significance because pretextual stops are legal when a traffic violation has occurred.

Trooper Weigel testified that he obtained consent from White to search the vehicle. The video tape does not capture the voice of White giving consent and because of the camera angle and the positioning of Trooper Weigel and White, she cannot be seen giving the consent. Trooper Weigel testified that she said "sure," he could look in the trunk. This Court finds Trooper Weigel's testimony credible that he obtained voluntary and uncoerced consent from White to look in the trunk of the car.

However, even if the Trooper had not obtained consent, inevitable discovery controls. The vehicle the defendants were traveling in did not belong to them. In fact, it had been overdue from a rental company for a week and no one in the car was an authorized driver on the rental agreement. With this information, Trooper Weigel could have and should have impounded and inventoried the contents of the vehicle.[11] The heroin and marijuana would have been legally discovered by the police even absent any consent by White. Defendants' motions to suppress are denied.

## Motion for Bill of Particulars and Reservation to file Motion to Quash

Defendants filed a Motion for Bill of Particulars and Reservation to File Motion to Quash. The Court granted defendants a reservation to file a motion to quash the indictment based on granting defendants' motion to access jury composition and selection information. As to the motion for bill of particulars, the Court denied this motion.

 Rule 7(f) of the Federal Rules of Criminal Procedure states that a court may issue a bill of particulars. The decision to issue a bill of particulars falls within the discretion of the court.[12] This discretion is exercised while adhering to the recognized scope of a bill of particulars.[13] A bill of particulars is not a discovery device.[14] It cannot be used to take measure of the government's case.[15] The purpose of a bill of particulars is to inform defendant of the substantive facts of the charges against him, but not to discover the evidentiary basis for the charges.[16]

**9.** Pretextual stops have long been held legal since the seminal decision of *Whren v. United States,* 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996).

**10.** *United States v. Botero–Ospina,* 71 F.3d 783, 787 (10th Cir.1995).

**11.** *United States v. Haro–Salcedo,* 107 F.3d 769, 773–74 (10th Cir.1997).

**12.** *United States v. Kunzman,* 54 F.3d 1522 (10th Cir.1995).

**13.** *United States v. Dunn,* 841 F.2d 1026, 1029 (10th Cir.1988).

**14.** *Id.*

**15.** *United States v. Rogers,* 617 F.Supp. 1024 (D.Colo.1985).

**16.** *United States v. Daniels,* 95 F.Supp.2d 1160, 1166 (D.Kan.2000) (citing *Dunn,* 841 F.2d at 1029).

The defendant is not entitled to know all the evidence the government will use against him at trial.[17] However, the defendant must be adequately apprized of the charges against him so that he may prepare a defense for trial.[18] Additionally, a bill of particulars is unnecessary where the information the defendant seeks is available through "some other satisfactory form." Courts have found an open file discovery policy is a satisfactory means of obtaining such information.[19]

■ In order for the defendants to persuade the Court to grant this motion, the defendants must show, specifically, how they would be prejudiced absent the bill of particulars.[20] Defendants have shown no reason why they would be prejudiced absent a bill of particulars. Defendants allege that the beginning date of the conspiracy in the indictment is not enough to inform them of the start date. The date given is an approximate, not a definitive date the conspiracy began. An approximate date is all that is required.

■ In argument to the Court, defendants' position was that while they knew the evidence that suggests the approximate time the conspiracy is alleged to have begun, they find that evidence less than credible. This is an issue for trial, not one of notice of the charges against them. During trial they can challenge the credibility of the government's evidence. Further, the written motion of the defendants requests specific evidence as to each element and stage of the conspiracy. This is not the purpose of a bill of particulars. Defendants are asking the Court to order the government to not only reveal the theory of their case but also each piece of evidence and how it will be used to prove the defendants' guilt. This is not allowed.

A similar case in this district agrees with this determination. In *United States v. Daniels*,[21] the defendant sought specifics on what medical procedures, patient names, specific surgeries, and documents were involved in the indictment counts alleging false and misleading information. The court found that these were essentially evidentiary requests. The indictment provided the statutory language and the theory of the government's case as applied to the defendant's acts; however, exactly which specific procedures were involved were outside the scope of a bill of particulars. The same conclusion is necessary in this case. The indictment sets out the approximate dates in each count. The specific activity of the defendants that proves each element are evidentiary issues and not subject to disclosure through a bill of particulars. The government has an open file policy in this case and has stated that full disclosure was made to the defendants. This fairly apprizes the defendants of the charges against them and protects them against double jeopardy. Defendants' motion is denied.

## Motion to Sever Trials

Defendant White filed a motion to sever trials alleging that she was a minimal participant without a criminal history and that trying her with her co-defendants, who have significant criminal histories, would cause undue prejudice and prevent the

17. *United States v. Levine*, 983 F.2d 165, 166–67 (10th Cir.1992).

18. *United States v. Higgins*, 2 F.3d 1094, 1096 (10th Cir.1993).

19. *Daniels*, 95 F.Supp.2d at 1166 (citing *United States v. Canino*, 949 F.2d 928, 949 (7th Cir.1991)).

20. *Id.* at 1166 (citing *United States v. Sturmoski*, 971 F.2d 452, 460 (10th Cir.1992)).

21. 95 F.Supp.2d 1160 (D.Kan.2000).

jury from compartmentalizing the evidence against each defendant.

 Fed.R.Crim.P. 14 provides that co-defendants may be severed for trial if by their joinder, one or both are prejudiced.[22] Whether to sever a trial is within the discretion of the court.[23] White must show actual prejudice and this Court must weigh that prejudice against the inconvenience of separate trials.[24] White has not shown any actual prejudice from being tried with her co-defendants. In fact, after hearing evidence at the motions hearing, the evidence which White fears may prejudice her would necessarily be admitted both at a joint and individual trial. White's motion for severance is denied.

**Motion to Access Grand Jury Composition and Selection Information**

Defendants seek access of the jury composition and selection information. Specifically, the motion requests the following:

1. Jury Selection Journal;
2. All information pertaining to the formulation of the grand jury selection quotient number and starting number relating to the Indictment in the matter;
3. Juror Qualification Forms for all potential jurors call [sic] in the case;
4. List of potential jurors from the Master Jury Wheel and Qualified Jury Wheel in the above case;
5. List of actual jurors who served on the Grand Jury in the above case; and
6. List of stricken jurors.[25]

After hearing argument from counsel, the Court granted the motion pursuant to the holding and limitations in *United States v. Van Pelt, et al.*[26] In *Van Pelt*, the defendants made an identical request for grand jury information. That case based its decision on *Test v. United States.*[27] In *Test*, the Supreme Court overruled the District of Colorado and the Tenth Circuit and held that "a litigant has essentially an unqualified right to inspect jury lists." [28]

In this case, as in *Van Pelt*, the defendants have not shown that they are entitled to all of that which their motion requests. The grand jury process is one of secrecy and sanctity. While the defendants have an "unqualified right" to grand jury materials, that must be weighed against the interest of grand jury secrecy while allowing the defendant to exercise his right to find any information that may have amounted to a constitutional violation. The right is unqualified because the defendants could not establish a violation absent access to the selection materials.

 The defendants may access the information regarding the jury selection process in this district. However, defendants' request to access the names of the jurors is denied. It is too far an invasion into the secrecy of the grand jury process, and names and address of the grand jurors would not aid in any constitutional challenge the defendants might bring. Necessarily, this also denies the defendants' request for the jury questionnaires of the jurors placed in the master and qualified

---

**22.** Fed.R.Crim.P. 14 (2002 Second Revised Edition).

**23.** *United States v. Janus Industries*, 48 F.3d 1548 (10th Cir.1995).

**24.** *United States v. Hollis*, 971 F.2d 1441, 1456 (10th Cir.1992).

**25.** Doc. 135, p. 2.

**26.** No. 92–40042–01thru 92–40042–07, 1993 WL 23730 (WL D.Kan.Jan. 13,1993).

**27.** 420 U.S. 28, 95 S.Ct. 749, 42 L.Ed.2d 786 (1975).

**28.** *Id.* at 30, 95 S.Ct. 749.

jury wheel for this case. Having access to the method of selection is enough to comply with 28 U.S.C. § 1861 et seq. It is not the actual selection of the grand jury which would constitute the violation, but rather whether the jury was selected "at random from a fair cross section of the community." [29]

**Motion to Obtain Expert**

Defendant Nichols filed a motion to obtain expert services nearly identical to the motions of his co-defendants (Docs. 89 and 126). Counsel for Nichols offered additional argument which the Court did not find persuasive. For the reasons set out in the Court's previous orders (Doc. 98 and 153), which counsel acknowledges having read, this motion is denied.

**IT IS THEREFORE ORDERED** that defendants' motions to suppress (Docs.58, 119, 121, 26) are DENIED. Defendants' motion for bill of particulars is DENIED, but the reservation to file a motion to quash is GRANTED (Doc. 141). Defendant White's motion to sever (Doc. 105) is DENIED. Defendants' Motion to Access Grand Jury Composition and Selection Information (Doc. 135) is GRANTED IN PART AND DENIED IN PART as set out above. Defendant Nichols' Motion to Obtain Expert (Doc. 146) is DENIED.

IT IS SO ORDERED.