**UNITED STATES of America**

v.

**Quante RICE, Defendant.**

**Criminal No. 07–0011–WS.**

United States District Court,
S.D. Alabama,
Northern Division.

May 29, 2007.

Carlos A. Williams, Federal Defender's Office, Southern District of Alabama, Mobile, AL, for Defendant.

John G. Cherry, Jr., U.S. Attorney's Office, Mobile, AL, for United States of America.

## ORDER

STEELE, District Judge.

This matter is before the Court on defendant Quante Rice's Motion to Inspect Jury Records for Both the Grand Jury and the Petit Jury (doc. 18). The Motion has been briefed and is ripe for disposition.

### I. Background.

On January 24, 2007, a grand jury convened in the Southern District of Alabama handed down a two-count Indictment (doc. 1) charging defendant Quante Rice with taking a motor vehicle by force and violence and by intimidation, resulting in death, all in violation of 18 U.S.C. § 2119; and with using, carrying and discharging a firearm during and in relation to a carjacking offense, in violation of 18 U.S.C.

§ 924(c). The Indictment includes certain special findings relating to defendant's eligibility for a sentence of death, pursuant to 18 U.S.C. §§ 3591 and 3592. The Order Concerning Initial Appearance (doc. 7) confirms the Government's intention to seek the death penalty.

On March 26, 2007, defendant, by and through counsel, filed his Motion to Inspect Jury Records (doc. 18). The Motion enumerates 26 categories of records and information that defendant seeks. These categories include records relating to this District Court's jury selection plan; records relating to this District Court's master and qualified jury wheels for the last 10 years; records relating to persons who were deemed unqualified, excused, requested deferments, did not respond to the qualifying questionnaire, or were no-shows for jury duty for the last 10 years; records of all venires and jury panels called for jury duty in the last 10 years; and policies, manuals, audits, evaluations and other records pertaining to the jury selection process.[1]

The Government has filed a Response (doc. 20), objecting only to the scope of the request rather than to request itself, and asking that the Court interpose some boundaries to prevent defendant's endeavor from amounting to "just a wide open

---

1. A more detailed recitation of each of the 26 categories of information at issue is as follows: (1) the District Court's written master plan for random selection of grand and petit jurors in effect at the time of the Indictment; (2) the source lists from which the master wheel is prepared, including names, addresses, race and gender for each person; (3) all records verifying data in the source lists; (4) all computer programs used to devise or record information in the source lists; (5) the list of all persons culled from source lists and placed in the master wheel, including names, addresses, race and gender; (6) all records verifying data in the master wheel; (7) all computer programs used to devise or record information in the master wheel; (8) the questionnaire sent to jurors to determine their qualifications for jury duty; (9) the list of persons culled from the master wheel and placed in the qualified juror wheel, including names, addresses, race, gender, and questionnaires; (10) all records verifying data in the qualified wheel; (11) all computer programs used to devise or record information contained in the qualified wheel; (12) records of all persons culled from the master wheel and determined not to be qualified for jury duty, including names, addresses, race, gender, and questionnaires; (13) copies of all correspondence sent to or received from any office concerning obtaining names of potential jurors; (14) records of all persons who did not respond to qualifying questionnaires, including names, addresses, race and gender; (15) copies of all additional correspondence to or from persons who did not respond to qualify-ing questionnaires; (16) records of all persons who requested recusal from jury duty, including names, addresses, race and gender; (17) records of all persons who requested deferment of jury duty, including names, addresses, race and gender; (18) records of all persons found not to be qualified for jury duty, including names, addresses, race and gender; (19) records and lists of all jurors maintained in any supplemental wheels for later jury duty, including names, addresses, race and gender; (20) records of all persons who failed to respond to summonses for specific jury duty, including names, addresses, race and gender; (21) records of all persons who returned jury questionnaires when summoned for specific jury duty, but failed to appear at the appointed date and time, including names, addresses, race and gender; (22) records of all venires and jury panels called for jury duty in the last ten years, including lists for each individual trial or grand jury term, including names, addresses, race and gender; (23) computer programs used to cull names for jury venires, and/or to devise or record information contained in venires; (24) all policies, rules, regulations, procedures, manuals or other written instructions created or maintained by the Clerk's Office for selecting and compiling jury wheels and juries; (25) all other records and papers used by the Clerk of Court in the jury selection process; and (26) all audits, evaluations or assessments of the current plan and/or jury wheels. All of these records are requested for the current and previous two jury wheels, thereby extending back for the last ten years.

fishing expedition" and to avoid the imposition of unnecessary burdens on the Clerk of Court in accommodating defendant's request. (Response, at 2.)

## II. Analysis.

### A. The Jury Selection and Service Act.

Defendant's request is made pursuant to the Jury Selection and Service Act of 1968, 28 U.S.C. §§ 1861 et seq. (the "Act"), which articulates a federal policy that "all litigants in Federal courts entitled to trial by jury shall have the right to grand and petit juries selected at random from a fair cross section of the community in the district or division wherein the court convenes." 28 U.S.C. § 1861. The Act further recognizes a federal policy that all citizens shall have the opportunity to be considered for service on grand and petit juries in federal district courts, and the obligation to serve as jurors when summoned for that purpose. *Id.* To implement these policies, the Act sets forth certain rules and procedures governing the selection of grand and petit juries. The Act is not simply an idle theoretical exercise setting forth an aspirational ideal of fairness. To the contrary, serious repercussions may flow from noncompliance, as a criminal defendant "may move to dismiss the indictment or stay the proceedings against him on the ground of substantial failure to comply with the provisions of this title in selecting the grand or petit jury." 28 U.S.C. § 1867(a).[2]

■ An obvious practical hurdle to enforcement of the Act is that a litigant, and particularly a criminal defendant, will in most cases not possess at his fingertips information about the minutiae of a district court's jury selection procedures. To remedy this informational shortfall and to ensure that defendants are armed with the necessary data to assess the viability of any contemplated challenge to jury selection processes, the Act provides that parties in a case "shall be allowed to inspect, reproduce, and copy such records or papers [used by the jury commission or clerk in connection with the jury selection process] at all reasonable times during the preparation and pendency of such a motion." 28 U.S.C. § 1867(f); *see also United States v. Diaz,* 236 F.R.D. 470, 477 (N.D.Cal.2006) (defendant seeking to make fair cross-section claim under the Act may access jury selection records not otherwise available to the public). The Supreme Court has interpreted this section as granting litigants "essentially an unqualified right to inspect jury lists.... Indeed, without inspection, a party almost invariably would be unable to determine whether he has a potentially meritorious jury challenge." *Test v. United States,* 420 U.S. 28, 30, 95 S.Ct. 749, 42 L.Ed.2d 786 (1975) (footnotes omitted) (granting permission for defendant to inspect and copy jury lists pertaining to the grand and petit juries in his indictment). Pursuant to *Test,* it is clear that a defendant need not prove that his contemplated challenges to the jury selection process have merit as a precondition to accessing jury records. *See Government of Canal Zone v. Davis,* 592 F.2d 887, 889 (5th Cir.1979) ("Since the appellants' right to inspection was unqualified, whether or not the accompanying affidavit established a prima facie case of defective jury selection process is of no import.").[3] Rather, "[t]o avail himself of

---

2. "[S]ubstantial noncompliance occurs when administration of the Act fails to return a jury drawn from a random cross-section of the community." *United States v. Diaz,* 236 F.R.D. 470, 477 (N.D.Cal.2006).

3. *See also United States v. Royal,* 100 F.3d 1019, 1025 (1st Cir.1996) ("Because the right of access to jury selection records is 'unqualified,' a district court may not premise the grant or denial of a motion to inspect upon a

the right of access to jury selection records, a litigant need only allege that he is preparing a motion to challenge the jury selection process." *United States v. Royal*, 100 F.3d 1019, 1025 (1st Cir.1996) (finding that district court erred in requiring defendant to show probable success on the merits as a condition to accessing records); *see also Diaz*, 236 F.R.D. at 477 (allegation that defendants anticipate filing a motion challenging jury-selection procedures is sufficient to trigger right of access); *United States v. Williams*, 2007 WL 1223449, *5 (D.Haw. Apr.23, 2007) (similar).

██ In the wake of *Test*, it has been held that "[t]he right to inspection extends to all jury selection materials relevant to a complete determination of whether a grand or petit jury has in fact been selected at ... random from a fair cross-section of the community." *United States v. McLernon*, 746 F.2d 1098, 1123 (6th Cir. 1984) (citation omitted). The question before the Court today is whether that right to inspection is broad enough to encompass all 26 categories of information delineated in Rice's Motion.

██ Despite recognizing defendants' near-absolute right to inspect jury lists under *Test*, federal courts have uniformly declined to allow unfettered access to all jury-related documents and records. *See, e.g., Diaz*, 236 F.R.D. at 482 ("The right to discovery by the Act and *Test* is not limitless."); *United States v. Carlock*, 606 F.Supp. 491, 493 (E.D.La.1985) ("the right of access involved here is not without limitations"); *United States v. Gotti*, 2004 WL

2274712, *6 (S.D.N.Y. Oct.7, 2004) (*"Gotti II"*) (defendant making § 1867(f) request "is not entitled to unencumbered access to juror information"); *United States v. Causey*, 2004 WL 1243912, *9, *18 (S.D.Tex. May 25, 2004) (collecting cases for proposition that while a criminal defendant has an essentially unqualified right to inspect master list from which members of his grand and/or petit jury were selected, access to other jury records can be restricted); *United States v. Gotti*, 2004 WL 32858, *11 (S.D.N.Y. Jan.6, 2004) (*"Gotti I"*) ("Moving defendants do not have an absolute right of access to all materials relating to the grand jury selection...."). The Act is not a license for litigants to rummage at will through all jury-related records maintained by the Clerk of Court. Indeed, as one appellate court has explained, § 1867(f) "provides that the contents of records or papers used by the clerk shall not be disclosed unless those records' contents are shown to be 'necessary' for the preparation of a motion" alleging substantial failure to comply with the Act. *United States v. Davenport*, 824 F.2d 1511, 1515 (7th Cir.1987); *see also Diaz*, 236 F.R.D. at 482 ("While a defendant has a statutory right to data required for a proper assessment of the composition of the panel, the [Act] does not automatically permit disclosure of other jury information" without a sworn statement showing particularized need). Under that reasoning, then, if certain records or papers are not reasonably necessary for preparation of a motion under the Act,

showing of probable success on the merits of a challenge to the jury selection provisions."); *United States v. Alden*, 776 F.2d 771, 775 (8th Cir.1985) ("Even if the defendant's anticipated challenges to the jury selection process, as articulated at the time of his motion for inspection, are without merit, the defendant may still inspect the jury records. Grounds for challenges to the jury selection process

may only become apparent after an examination of the records."); *Diaz*, 236 F.R.D. at 477 ("Access to such records may not be conditioned on the defendants showing a probability of success on the merits of the jury-selection challenge."); *United States v. Carlock*, 606 F.Supp. 491, 492 (E.D.La.1985) (following *Davis*).

then the Act does not authorize access to those records or papers.

### B. Defendant's Requests for Certain Categories of Information.

In light of the foregoing principles, Rice is not entitled to a blanket order affording him unrestricted access to all materials remotely bearing on the jury selection process. For that reason, the Court's ruling on the specific information requested must necessarily be made on a category-by-category basis.

#### 1. Written Plan.

■ The United States District Court for the Southern District of Alabama has adopted a Plan for the Random Selection of Grand and Petit Jurors dated April 17, 1992 (the "Plan"), and approved by the Reviewing Panel of the Judicial Council of the Eleventh Circuit effective September 30, 1992. The Plan may answer many of Rice's questions concerning jury selection processes in this District Court, and is clearly necessary for the preparation of any motion alleging substantial failure to comply with the Act. Accordingly, Rice's request (Request #1) for a copy of the Plan is **granted.**

#### 2. Jury Lists.

The Court's understanding is that the master jury wheel was last filled on January 21, 2005 and will not be emptied and refilled for a period of four years. The master wheel was filled from a source list of 518,476 names, constituting the entire voter registration lists for the 13 counties comprising this judicial district, as furnished by the Secretary of State of Alabama. From that source list, 100,000 names were selected on January 21, 2005.[4] The resulting list of 100,000 names constitutes the master jury wheel. Those 100,000 persons were sent questionnaires for the purpose of determining whether they were qualified to serve as jurors. Some 54,586 persons returned those questionnaires and, of that number, 30,029 were found to be qualified to serve. The resulting list of 30,029 names constitutes the qualified jury wheel for this judicial district.[5]

■ Defendant now seeks access to these various lists, including names, addresses, race and gender for each person (Requests #2, 5, 9). It is clear that, under Test, a criminal defendant is "entitled to inspect, reproduce, and copy the master jury list to support a motion … based upon a substantial failure to comply with the provisions of [the Act] in selecting the grand or petit jury." *United States v. Curry*, 993 F.2d 43, 44 (4th Cir.1993) (finding that district court erred in denying defendant's request to inspect master list of jurors from which grand jury indicting him was selected).[6] The Government concurs that defendant has the right to in-

---

**4.** As one court has observed, "[v]oter lists take in a cross section of the community of sufficient magnitude to satisfy the Act in the absence of some particular circumstances or scheme undermining the worthy purposes of the Act." *Davenport*, 824 F.2d at 1515.

**5.** The numbers of questionnaires returned and individuals placed in the qualified wheel were correct as of March 14, 2006, the date that sampling was done from the returned questionnaires. Those numbers have fluctuated slightly since that date, as events occur to cause individuals to be added or subtracted from the qualified wheel (*e.g.*, persons who returned questionnaires after the March 14,

2006 date, persons who became disqualified or were excused from service after that date for reasons stated in the Plan, etc.). As such, the numbers cited above may not be precisely accurate today, but should be close approximations.

**6.** *See also Diaz*, 236 F.R.D. at 481 (granting access to master and qualified jury wheel lists in effect when grand jury that indicted defendant was empaneled and when petit jury will be empaneled); *United States v. Brown*, 2006 WL 2990463, * 1 (D.N.H. Oct.19, 2006) (recognizing unqualified right to inspect master jury lists); *Causey*, 2004 WL 1243912, *10 (post-*Test*, all courts agree that a defendant is

spect these jury lists. Accordingly, pursuant to *Test* and its progeny, Rice's request will be **granted** as to inspection of this district's database which contains both the list of 100,000 names in the master jury wheel filled on January 21, 2005 and the list of approximately 30,029 names in the qualified jury wheel filled shortly thereafter (Requests # 5 and # 9).[7] That said, the raw data in the original source list of 518,476 names is not reasonably necessary to any fair cross-section challenge Rice might raise, particularly given the other demographic information provided herein. *See Diaz*, 236 F.R.D. at 483 (finding that access to raw data from original source lists is not authorized by the Act, as such lists are not necessary to preparation of fair cross-section challenge when defendants have otherwise been furnished with demographic data relating to pertinent jury wheels). For that reason, defendant's request for access to the entire original source list received from the Secretary of State (Request # 2) is **denied.**

■ Related to his request for jury lists, Rice requests records verifying data contained in the source list and correspondence sent to and received from voter registration offices (Requests # 3, 13). These requests are **granted** insofar as they relate to a certification issued by the Secretary of State of the State of Alabama on January 3, 2005, concerning the voter registration data furnished to the Clerk of Court at that time. Defendant having failed to show any reasonable need for information beyond the certification, and the certification appearing fully responsive to any need to verify the origin and veracity of the source list, the request for verification and correspondence is otherwise **denied.** Similarly, defendant requests all records verifying data contained in the

---

entitled to inspect, reproduce and copy jury lists); *Gotti II*, 2004 WL 2274712, at *6 (authorizing defendant to inspect contents of present master jury wheel for the specific courthouse at issue).

7. An issue has arisen in various cases concerning a defendant's right to the names of specific persons selected from the lists to serve on the grand jury that indicted him. *See, e.g., McLernon*, 746 F.2d at 1123 (district court did not err in refusing to provide defendants with names, addresses, and demographics of specific grand jurors who returned indictment against them, where disclosure of Master List and demographic data about general pool was sufficient to meet unqualified right to inspection); *In re Grand Jury Investigation*, 903 F.2d 180, 182 (3rd Cir.1990) ("although criminal defendants generally have the right to inspect jury selection records under [§ 1867(f)], they are not normally entitled to the names of the members of the grand juries that indicted them"); *United States v. Nichols*, 248 F.Supp.2d 1027, 1034 (D.Kan. 2003) (denying access to names and addresses of grand jurors as an excessive invasion into secrecy of grand jury process that would not aid in any challenge defendants might bring); *Carlock*, 606 F.Supp. at 493 (denying access to list of prospective jurors drawn for this

case and materials used in selecting petit jury from these prospective jurors until after jury is empaneled, and denying access to list of grand jurors and accompanying materials absent demonstration by defendant that inspection of such materials remained necessary after review of records pertaining to master and qualified jury wheels); *Brown*, 2006 WL 2990463, at *1 (despite unqualified right to inspect master jury lists, denying disclosure of names, social security numbers and addresses of individuals selected as grand jurors); *Causey*, 2004 WL 1243912, at *12 (jury lists from which names of actual jurors have been redacted are sufficient to comply with *Test*, such that defendant would be allowed to inspect master wheels, provided that all references to individuals who have served or are serving on grand jury shall be redacted). In this case, defendant has not requested the personal identifying information of the grand jury that indicted him, and the identities of those who served on that grand jury could not reasonably be determined by review of the master wheel and qualified wheel database; therefore, any concern about revealing the identities of actual grand jury members in this case is simply not present.

master wheel and the qualified wheel (Requests # 6, 10). If the source lists have already been verified by the Secretary of State's certification, and if the master and qualified lists consist of subsets of data from the source list, then it is unclear how the concept of "verification" is even relevant to these subsets. More generally, it is unclear what defendant is requesting here or how any such request might relate to any potential challenge under the Act. The requests for records verifying data contained in the master and qualified wheels are therefore **denied.**

At least some courts have found that the right to inspection under § 1867(f) begins and ends with the relevant master jury list, and accompanying demographic data. *See, e.g., McLernon,* 746 F.2d at 1123 ("we conclude that appellant's unqualified right to inspection was satisfied by disclosure of the Master Lists and the relevant demographic data about the general pool from which the specific grand jurors were selected"). Nonetheless, Rice having requested access to numerous other categories of information, the Court now turns to these requests.

### 3. Questionnaires.

Rice requests access to all questionnaires completed by persons placed in the qualified jury wheel, as well as all questionnaires completed by persons who were determined not to be qualified (Requests # 9, 12). The 54,586 completed and returned questionnaires received from persons listed in the current master jury wheel do exist in hard copy form and are maintained by the Clerk of Court; however, courts have displayed profound reluctance to provide litigants with access to such materials, given the personal information contained on such questionnaires and the apparent unhelpfulness of such questionnaires in assessing the viability of any fair cross-section challenge. The leading case on this point is *United States v. Davenport,* 824 F.2d 1511 (7th Cir.1987), in which the Seventh Circuit correctly observed, "*Test* does not hold that completed juror questionnaires must be made available to defendants in addition to jury lists." *Id.* at 1514–15. The *Davenport* court reasoned that the jury lists themselves would be sufficient to enable the defendant to ascertain whether a challenge under the Act was warranted because "[i]f the system is not working in accordance with the Act's requirement the available lists could be of use in establishing an alleged deficiency," and the defendant had not demonstrated why other records besides available jury lists might be required. *Id.* at 1515. According to *Davenport,* specifically with respect to juror questionnaires, "[t]o give the defendant an absolute right of routine access to all materials would be an amendment of the Act," and would create a possibility of substantial abuse of information contained in such questionnaires. *Id.* Several other courts have followed *Davenport's* lead. *See, e.g., Diaz,* 236 F.R.D. at 482 (denying access to jury questionnaires for both qualified and unqualified jurors because, given that other furnished materials supply defendants with relevant demographic data required to challenge district's jury selection procedures, questionnaires were not necessary to prepare a motion alleging violation of the Act); *United States v. Nichols,* 248 F.Supp.2d 1027, 1034–35 (D.Kan.2003) (denying access to questionnaires for jurors placed in master and qualified wheels for this case, because access to method of selection is sufficient to comply with Act, irrespective of actual selection of grand jury in this case).[8]

---

**8.** That said, the Court recognizes that the case law is not uniform in this area, and that several unpublished decisions have extended access to questionnaires. *See United States v. Friel,* 2006 WL 2061395, *2 (D.Me. July 21,

■ The Court agrees with the *Davenport* analysis. All appearances are that the jury lists and other information provided pursuant to this Order will be sufficient to equip Rice with the relevant data needed to assess whether any challenge to this judicial district's jury selection procedures is warranted, and any marginal benefits of disclosure would be greatly outweighed by the risks associated with dissemination of personal information contained on those questionnaires and by the burden on the Clerk of Court in providing (and presumably supervising) defendant's access to in excess of 54,000 confidential questionnaires. Accordingly, on the information and arguments before the Court at this time, defendant's requests for juror qualification questionnaires for all members of the qualified jury wheel and all members of the master jury wheel who were found unqualified (Requests # 9, 12) are **denied** as being outside the scope of the materials accessible under § 1867(f).

■ On a related point, Rice requests access to a copy of "the questionnaire which is sent to jurors to determine if they are qualified for jury duty." (Request # 8.) Presumably, by this request, Rice is simply requesting a blank qualification questionnaire. As this document might be helpful to Rice in assessing whether he

reasonably does require access to the 54,-000 + completed questionnaires in order to make a challenge under the Act, this request is **granted.**

### 4. Records of Disqualifications, Non–Responders, and Deferrals.

In a series of requests, Rice seeks access to information concerning individuals from the master wheel who were not placed in the qualified wheel, whether because they did not return their questionnaires, they were deemed disqualified, or they requested deferment or recusal for some reason (Requests # 12, 14, 16, 17, 18). These requests are redundant, and are therefore **denied.**[9] The Court has authorized defendant to inspect the database for both the master wheel and the qualified wheel. By definition, all individuals listed in the master wheel who are not named in the qualified wheel have been disqualified, did not respond, or otherwise were excused; therefore, the database information concerning those individuals has already been provided. As for defendant's request for copies of correspondence to or from people who fail to return their qualifying questionnaires (Request # 15), such correspondence has no apparent bearing on any fair cross-section challenge; therefore, disclosure of these records is **denied**

2006) (granting defendant access to completed juror questionnaires of jurors summoned for grand jury that indicted defendant, based on government concession that defendant was entitled to same under § 1867(f)); *Causey,* 2004 WL 1243912, at *15 (allowing defendant to examine juror qualification questionnaires used to assemble qualified wheel, subject to "appropriate safeguards" to protect sensitive personal information, including Government counsel presence during all inspections, and no reproduction, copy or extraction of information from those questionnaires without court permission); *United States v. Van Pelt,* 1993 WL 23730, *9 (D.Kan. Jan.13, 1993) (granting defendant leave to inspect completed jury qualification forms returned by per-

sons selected from master jury wheel in determining qualified jury wheel, but prohibiting copies of such documents without a motion setting forth with specificity the legal and factual basis for said request).

**9.** To the extent that they are not redundant, these requests are unnecessary under the Act, in light of the information already provided to Rice. *See Diaz,* 236 F.R.D. at 483 (denying access to lists of disqualified and excused persons because any screening processes with disparate impact on protected groups would be apparent from demographics of qualified jury wheel, which was provided to defendants).

as unnecessary. *See generally Diaz*, 236 F.R.D. at 480–81 ("It is not clear how reports of the number of persons selected and excused as jurors is necessary to support a claim for a substantial failure to maintain a representative jury composition.").

With respect to Rice's request for records and lists of jurors maintained in supplemental wheels for later jury duty (Request # 19), no such supplemental wheels are provided for in the Plan. To the contrary, the Plan provides that jurors who are excused from service for hardship or similar reason will be put back in the qualified jury wheel and will be subject to being redrawn at a later date. Accordingly, this request is **denied** because the records sought do not exist.

### 5. Specific Jury Duty Information.

■ Defendant also requests certain records concerning particular jury panels, such as information concerning persons who did not respond to specific jury summonses and persons who were no-shows at the date and time appointed for service (Requests # 20, 21). Data concerning prospective jurors who ignore summonses or who fail to appear for jury service when commanded to do so would appear to have no relevance to any challenge under the Act that Rice may be contemplating. As such, this information appears to exceed the scope of that required by *Test*, and its disclosure is **denied** at this time.

### 6. All Venires/Jury Panels from the Last Ten Years.

■ Rice also seeks "records of all venires and jury panels called for jury duty in the last ten years, including the lists for each individual trial or grand jury term." (Request # 22.) With this sweeping request, defendant would have the Clerk of Court furnish him with the name and demographic information for each and every person who has been called for jury duty

in this District Court for the last decade. Nothing in the Act or the interpretive case law thereunder would support such an expansive request. To the contrary, courts examining the Act have routinely limited the scope of the information provided to the particular jury selection processes and methods applied in the defendant's case. It matters not for purposes of any challenge Rice might make what the composition of the jury pool for a grand jury or petit jury empaneled in this District Court in 1997 might have been. All that matters is whether the jury selection process applied with respect to the grand jury that indicted Rice was in substantial compliance with the Act. The case law bears this out, with one court observing, "Defendants, of course, may challenge only improprieties affecting the particular grand jury which indicted them." *United States v. Bearden*, 659 F.2d 590, 601 (5th Cir.1981). Other courts have embraced this principle. *See Diaz*, 236 F.R.D. at 482 ("defendants' request for writings, reports or other similar records relating to jury-selection procedures for past grand juries and past petit juries is not authorized by 28 U.S.C. § 1867(f)"); *United States v. Layton*, 632 F.Supp. 176, 178 (N.D.Cal.1986) (defendant lacks standing to complain about excusal of jurors in other cases because nothing in the Act suggests that a criminal defendant may challenge minor aspects of proposed jury selection procedures in the abstract, before such procedures are used to select that defendant's grand or petit jury). The Court is aware of no authority deeming such a sweeping request within the scope of § 1867(f). Absent some showing from Rice that this information is reasonably necessary to prepare his § 1867(a) motion, this request is **denied** as overly broad.

### 7. Computer Programs and Policies/Manuals.

■ In several of his requests, Rice seeks copies of the computer programs

used to devise or record jury wheel data or to cull names for jury venires. (Requests # 4, 7, 11, 23.) This District Court and many others use a Juror for Windows ("JFW") software application that facilitates the District Court's Jury Management System ("JMS"). This software is provided by an outside vendor. Defendant offers no rationale or explanation for his extraordinary request for copies of this software, and it is unclear how access to such software would be reasonably necessary to any challenge under the Act. Moreover, pages 11 to 13 of the Plan provide a basic explanation of the electronic procedures used in the jury selection process and may be sufficient to explain that methodology. Without some greater showing by defendant that access to the JFW/JMS software is necessary to investigate or prepare his motion under the Act, the undersigned will not take the extraordinary and apparently unprecedented step of allowing defendant to inspect or utilize that software. This request is **denied**.[10]

■ Rice also requests copies of "all policies, rules, regulations, procedures, manuals or other written instruction which exists to instruct employees of the Clerk's office in selecting and compiling jury wheels and juries." (Request # 24.) The principal such document is the Plan itself, which is already being furnished to defendant. There is also a 456–page Federal Jury Management System User Manual,

which the undersigned has reviewed *in camera* in connection with Rice's Motion. This Manual is a technical/training manual prepared by an outside source and detailing the features of the JFW/JMS software package. By way of illustration, the Manual includes such features as a section explaining how to use the mouse while operating the software (Manual, at 19), an explanation of the "Create New Pool command" (Manual, at 34), and a description of different methodologies for data entry of questionnaire responses (Manual, at 46–47). This kind of nuts-and-bolts technical manual is undoubtedly of assistance to any Clerk's Office employees who utilize that software, but it does not provide any instruction to those employees as to this District's prescribed procedures and methodologies for selecting and compiling jury wheels and juries. Accordingly, the Federal Jury Management System User Manual is not responsive to Rice's Request # 24. Even if it were responsive under that request or the catch-all request, Request # 25 (seeking "all other papers or records used by the clerk in connection with the jury selection process"), it does not appear that a 456–page how-to manual accompanying the software used by this District Court in the jury selection process would be of any relevance, much less necessity, to Rice's contemplated challenge under the Act. The Court has been unable to locate any authorities in which such an

---

10. In so concluding, the Court does not adopt the argument presented by the Government in its response. The Government relies on *United States v. Davis*, 546 F.2d 583 (5th Cir.1977) for the proposition that "review by the defense of the computer programs used by the clerk in the selection process is not necessary unless after receipt of the master wheel information, the defense makes some showing that the program is defective." (Response, at 4.) But that is not exactly what the *Davis* court said; rather, *Davis* found that without evidence or allegations of improprieties, lack of public access to automated drawings was not

a substantial failure to comply with the Act. *See id.* at 589. That ruling is distinct from the question presented here, which is whether the JFW/JMS software lies within the scope of § 1867(f). But the Court agrees with the Government's more general point that if the demographic data provided by this Order reflects that the fair cross-section requirements are satisfied, then the proof is in the pudding and inspection of the software that produced those results would appear superfluous and unhelpful to preparation of a challenge under the Act.

item has been found to be within the purview of § 1867(f). There is authority to the contrary. *See Diaz*, 236 F.R.D. at 484 (denying requests for technical documents relating to description or technical characteristics of the computer program used in jury selection process on the grounds that a detailed program description is unnecessary to preparation of any fair-cross section challenge). Accordingly, Request # 24 is **denied** on the grounds that the Plan is already being produced, the Manual is not necessary to preparation of defendant's § 1867 motion, and no other written instructions exist.

### 8. Assessments/Evaluations and Other Records/Papers.

In Requests # 25 and 26, defendant requests other records and papers used in the jury selection process, as well as audits, evaluations or assessments of the current Plan and/or jury wheels. The Court **grants** these requests with respect to the following responsive documents: (a) the Report on Operation of the Jury Selection Plan (Form JS–12) completed on January 11, 2007, along with any exhibits to same; (b) the 2004 Voter Count and Master Wheel Count by County chart; (c) the State of Alabama Registered Voter Totals chart; (d) the Source List Race/Gender Reports for the entire source list and each division, dated March 14, 2006; (e) the Source List Race/Gender Reports for the qualified list and each division, dated March 14, 2006; and (f) the Source List Race/Gender Reports for the not qualified/excused list and each division, dated March 14, 2006. *See generally Diaz*, 236 F.R.D. at 481 (granting access to JS–12 report relating to selection process of pool from which grand jury was drawn, inasmuch as such report provides statistics necessary to identify whether an identifiable group was substantially under-represented in jury pool from which defendants' grand jury was drawn).

### 9. Information Related to Previous Master and Qualified Wheels.

Although not recited in any specific numbered request, Rice asserts that all of his document requests "are requested for the present and two prior jury wheels, and thus are requested for the last ten years." (Motion, at 4.) For the reasons set forth in § II.B.6., *supra*, the Court finds that defendant is not entitled to any records or information pertaining to prior jury wheels; rather, his requests must be confined to the master and qualified jury wheels that yielded the grand jury that indicted him, and that will yield the petit jury that will serve as finder of fact at his trial, whenever that may occur. Data and records from prior jury wheels would not be of any relevance to this endeavor. Accordingly, defendant's requests for data and records are **denied** to the extent that they seek information concerning previous jury wheels. Rice was indicted by a grand jury drawn from the current jury wheels, and will be tried before a petit jury drawn from those same wheels, provided that his trial occurs before the next scheduled refilling of the master wheel in late 2008 or early 2009.

## III. Conclusion.

For all of the foregoing reasons, the Court finds that Rice's Motion to Inspect Jury Records (doc. 18) is **granted in part, and denied in part.** Specifically, it is **ordered** as follows:

1. The Motion is **granted** with respect to Request # 1, # 3 (to the extent it seeks a copy of the Secretary of State's certification only), # 5, # 8, # 9 (except as to questionnaires), # 13 (only with respect to Secretary of State's certification), and # 25 and # 26 (with respect to enumerated documents only). In all other respects, the Motion is **denied.**

2. In accordance with this ruling, the Clerk of Court is **directed** to make the following records and papers available for inspection, copying and reproduction by defendant's counsel upon request, at reasonable times and upon reasonable notice: (i) the Plan for the Random Selection of Grand and Petit Jurors dated April 17, 1992; (ii) the certification provided by the Secretary of State dated January 3, 2005; (iii) a blank copy of the questionnaire sent to individuals in the 2005 master wheel to determine whether they are qualified to serve as jurors; (iv) the Report on Operation of the Jury Selection Plan (Form JS–12) completed on January 11, 2007, along with any exhibits to same; (v) the 2004 Voter Count and Master Wheel Count by County chart; (vi) the State of Alabama Registered Voter Totals chart; (vii) the Source List Race/Gender Reports for the entire source list and each division, dated March 14, 2006; (viii) the Source List Race/Gender Reports for the qualified list and each division, dated March 14, 2006; and (ix) the Source List Race/Gender Reports for the not qualified/excused list and each division, dated March 14, 2006.

3. The Clerk of Court is further **directed** to make the database containing the 2005 master jury wheel and the 2005 qualified jury wheel available to defendant's counsel for inspection upon request, at reasonable times and upon reasonable notice. To the extent that defendant desires to have copies or reproductions of the database, those materials will be furnished in hard copy, CD–R, or such other format as may be mutually agreeable to the Clerk of Court and defendant's counsel, with due regard for both the defendant's preference for a particular format and any technical difficulties, delays, inconvenience or expense that the Clerk may incur in providing the data in such a format. The disclosure of these jury lists is subject to certain safeguards to protect the personal information of individuals listed in the database. In particular, this information may be disclosed only to defendant's counsel, investigators, secretaries and paralegals, and then only to the extent reasonably necessary to render professional service in this litigation; to retained experts who agree that by virtue of disclosure to them of this information they submit to the *in personam* jurisdiction of this court; to persons with prior knowledge of the documents or the confidential information contained therein; and to court officials involved in this litigation. Defense counsel is **ordered** not to use these jury lists for any purpose other than the stated purpose of analyzing them to determine the viability of any contemplated challenge under the Jury Service and Selection Act in the instant litigation, and to undertake all reasonable measures to safeguard the confidentiality of this information both during and after the conclusion of this litigation.

4. The Government may access the same information being made available to defendant's counsel herein, subject to the same constraints and limitations.

5. Nothing herein is intended to forbid, or shall be construed as forbidding, Rice from requesting additional information concerning this District Court's jury selection processes upon written motion setting forth a particularized showing that the in-

formation provided herein is insufficient to enable him to determine whether sufficient grounds exist to challenge the jury selection processes utilized in this case. If defendant later can demonstrate that additional disclosures are necessary to his contemplated fair cross-section challenge, then he may request further discovery by motion to the Court. However, Rice is cautioned that "[a]n untimely assertion that counsel wants more data does not automatically entitle the litigant to another round of records." *United States v. Buckner*, 830 F.2d 102, 104 (7th Cir. 1987). Where a defendant fails to make anything of the data he requested underlying the selection of the grand jury, a defendant is not entitled to "rummage through the records for other months" without such a showing. *Id.* Accordingly, any follow-up requests that Rice might wish to lodge should be filed in a prompt and timely manner, should reflect that defendant has thoroughly reviewed and exhausted the information provided pursuant to this Order, and should specify both the particular shortcomings in the data and records provided and how the particular supplemental information that is sought is reasonably expected to remedy those shortcomings.

DONE and ORDERED.